UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
TERRY BLIGEN,                           :
                        Petitioner,     :
                                        :    09 Civ. 3841 (KBF)
        -v-                             :
                                        :    MEMORANDUM OPINION
SUPERINTENDENT C. WOUGHTER,             :       AND ORDER
                        Respondent.     :
                                        :
----------------------------------------X



Katherine B. Forrest, District Judge:

    Terry Bligen ("petitioner") filed this pro se petition for

a writ of habeas corpus (the "petition") pursuant to 28 U.S.C.

§ 2254 in April 2009.  Respondent's opposition was filed in

October 2009.  Petitioner did not file a reply.  Petitioner

asserts that there were various constitutional infirmities in

his trial in the New York State Supreme Court and therefore, he

is being held in state custody in violation of his

constitutional rights.[1]

    Petitioner's claims relate to his conviction on January 6,

2005, in New York State Supreme Court, of Criminal Possession of

a Controlled Substance in the Third Degree (Penal Law

---

    [1] Petitioner was released on parole in November 2010.  A petitioner who
has been released on parole still fulfills the "in custody" requirement of
federal habeas petitions.  See Earley v. Murray, 451 F.3d 71, 75 (2d Cir.
2006).  For a released petitioner to ultimately succeed, however, apart from
the merits inquiry, he would be required to amend his petition to include the
New York State Parole Board, which currently has constructive custody of
petitioner.  See Jones v. Cunningham, 371 U.S. 236, 241 (1963).  Given that
petitioner is proceeding pro se, and that the as set forth herein amendment
would not affect the outcome of dismissal, this Court will overlook this
failure and proceed to decide the petition on the merits.

§ 220.16(3)) and Criminal Possession of a Controlled Substance in the Seventh Degree (Penal Law § 220.03).  Petitioner was sentenced as a second felony offender to an indeterminate prison term of six to twelve years.

On December 5, 2006, the Appellate Division, First Department, unanimously affirmed the judgment of conviction. People v. Bligen, 35 A.D.3d 171 (1st Dep't 2006).  On March 28, 2007, the New York Court of Appeals denied petitioner leave to appeal.  People v. Bligen, 8 N.Y.2d 919 (2007).

For the reasons set forth below, the petition is denied in its entirety.

I.    FACTUAL BACKGROUND

This Court recites only the facts necessary to resolution of the instant petition.  Additional factual background is contained in the submissions in briefs on this petition, found at docket nos. 1 and 10.

Petitioner was arrested on the evening of January 17, 2004. Four plainclothes officers observed petitioner and two other men gathered on the corner of 120th Street and Lenox Avenue addressing the occupants of a stopped car.  According to the testimony of two officers, the police had been following the car because it appeared to be driving with no intended purpose (a third officer testified that the car was parked at the corner when they arrived on the scene).  Someone yelled "yo, yo, yo,"

which is known in the area as a means of discretely alerting
other criminals to police presence; and the trio, which included
petitioner, dispersed and the car drove off.  Having heard the
words "yo, yo, yo," which these police officers understood to
carry a greater meaning than "hello," the officers believed drug
sales were taking place and exited their unmarked police
vehicle.

Petitioner was followed by two of the four officers as he
walked eastbound on 120th Street away from the corner and the
other two men.  Petitioner had initially been walking towards
the officers but then turned around, cutting into the street
between two parked cars.  The officers then observed petitioner
throw a black plastic bag he had been carrying onto the ground
between the parked cars.  After dropping the bag, petitioner
turned around and walked towards the officers.  According to
both officers' testimony at trial, the bag was recovered
approximately ten seconds after petitioner dropped it.  The bag,
which emitted a strong odor of PCP (akin to the scent of paint
thinner) when opened by the officers, was found to contain 53
glassine envelopes of the drug.  The petitioner was then stopped
and placed under arrest by Officer Jose Tejeda.

Upon conducting a search of petitioner, Officer Anthony
Lucas discovered $187 in cash in petitioner's pocket.  At trial,
petitioner testified that he had cashed two unemployment checks

3

(totaling $253.80) on the day of his arrest.  After cashing the checks, petitioner testified that he probably paid for car fare and a hot dog, gave his girlfriend some money, and purchased tea and cake.

Petitioner denies that he ever possessed the bag of PCP and offers a radically different account of the events of that evening than the testifying officers.  Petitioner maintains that he was holding a cup of tea and a piece of cake at the time of his encounter with the police.  At trial, petitioner testified that he was purchasing the items at a bakery when he observed a group of men chatting on the corner through the window.  After exiting the bakery with his tea and cake, petitioner testified that he observed the police exiting their vehicle and the group dispersing.  In an attempt to get out of the officers' way, petitioner crossed the street.  One of the officers observed him doing so and instructed petitioner to "freeze."  Petitioner contends that upon his refusal the officer knocked the tea and cake out of his hand and threw him against the police car and patted him down.  Another officer walked several car lengths away from where petitioner was detained and retrieved a black plastic bag from underneath a vehicle.  Petitioner testified that he had never had the bag and did not know what it contained.

Officer Lucas testified at trial that petitioner was carrying only a black plastic bag when he encountered him that night.  Lucas did not see petitioner carrying tea or any food -- nor did he observe any food in the area of the arrest.

In 1992, petitioner had been convicted of the felony of Criminal Sale of a Controlled Substance in the Third Degree after pleading guilty to selling heroin.  Although petitioner maintains that he was innocent of that crime, during his guilty plea allocution he stated that he was in fact guilty.  In 2000, petitioner had also been convicted of the misdemeanor of Criminal Possession of a Controlled Substance in the Seventh Degree.

II.  DISCUSSION

A. The Petition

Petitioner makes 7 arguments in support of his petition:

1.  that he was denied effective assistance of counsel when his attorney failed (i) to move to dismiss the indictment on the grounds that the trial evidence was not legally sufficient, (ii) to request a speedy trial under C.P.L. § 30.30; (iii) to properly argue and present the fact that the arresting officers did not have the probable cause to detain and conduct a search of petitioner as required by the Fourth Amendment; and (iv) to object to the insufficient jury instruction.

Further, counsel improperly waived petitioner's right to be present at the hearing to determine the admissibility of evidence of uncharged crimes and failed to conduct an inquiry into petitioner's absence before proceeding with the hearing.

2. that the prosecutor committed a <u>Rosario</u> violation by failing to deliver copies of Officer Anthony Lucas's memo book and transcript of his second grand jury testimony;

3. that the trial court erred in allowing into evidence the $187 in cash recovered from petitioner at the time of his arrest because of the prejudicial effect of evidence implying that petitioner committed other uncharged crimes;

4. that his conviction was obtained by use of evidence pursuant to an unlawful arrest because the arresting officers lacked probable cause as required by the Fourth Amendment;

5. that his conviction violates his constitutional right against double jeopardy;

6. that the prosecutor improperly questioned petitioner regarding his prior misdemeanor conviction for possession of PCP;

7. that the trial court failed to adequately instruct the jury that evidence of defendant's prior convictions could only be used for the purpose of determining credibility and not as substantive proof of guilt.

B. Standard of Review

In 1996, Congress passed the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214. A portion of that statute directly impacted the standard that a petitioner for federal habeas relief must meet. AEDPA "precludes a federal court from granting a writ of habeas corpus to a state prisoner unless the state court's adjudication of his claim 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Wetzel v. Lambert, 132 S.Ct. 1195, 1198 (2012) (quoting 28 U.S.C. § 2254(d)(1)). In Harrington v. Richter, 131 S. Ct. 770 (2011), the Supreme Court held that under § 2254(d), a "habeas court must determine what arguments or theories supported . . . the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. at 786. In the same decision, the Supreme Court made it clear that this standard is difficult to

meet.  Id.; see also Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011).  Federal courts are instructed to be highly deferential to state court rulings and to give those rulings the benefit of the doubt.  Cullen, 131 S. Ct. at 1398 (quoting Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).

The Second Circuit has reminded district courts reviewing state court convictions that they are engaging in collateral review only--and that direct review is the principle avenue for challenging a conviction.  See Bentley v. Scully, 41 F.3d 818, 823-24 (2d Cir. 1994).  In Bentley, the Second Circuit stated that, as a result, the role of federal habeas relating to state court convictions is secondary and narrow--success on such a petition is limited to grievous wrongs.  Id. at 824 (quoting Brecht v. Abrahamson, 507 U.S. 619, 633 (1993)).  The Supreme Court has stated that "an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment."  Brecht, 507 U.S. at 634 (quotation marks omitted).

"Consistent with the greater deference accorded to a final state court judgment on collateral federal review," petitioner is not entitled to habeas relief on trial error unless he can establish that it resulted in actual prejudice.  Bentley, 41 F.3d at 824; see also Brecht, 507 U.S. at 637.  Habeas relief is not appropriate where there is merely a reasonable possibility

8

that trial error contributed to the verdict.  Brecht, 507 U.S.
at 637; Bentley, 41 F.3d at 824.

C. Exhaustion

As a threshold matter, in order to obtain federal habeas
relief, petitioner must have sought and exhausted all avenues of
state court relief for each of the bases he raises.  Klein v.
Harris, 667 F.2d 274, 282 (2d Cir. 1981).  A failure to exhaust
means of state court relief generally creates a procedural bar
against federal habeas review.  28 U.S.C. § 2254(b); Picard v.
Connor, 404 U.S. 270 (1971) ("It has been settled . . . that a
state prisoner must normally exhaust available state judicial
remedies before a federal court will entertain his petition for
habeas corpus.")  In other words, failure to exhaust generally
strips a district court of jurisdiction to grant habeas relief.
Id.  To overcome this procedural bar and obtain federal habeas
review, "a petitioner who has procedurally defaulted in state
court must show both cause and prejudice."  Stepney v. Lopes,
760 F.2d 40, 45 (2d Cir. 1985).  A procedurally defaulted
petitioner may also obtain federal habeas review if allowing his
or her conviction to stand would result in a "miscarriage of
justice."  Schlup v. Delo, 513 U.S. 298, 324-25 (1995).

Petitioner has exhausted his state court review
possibilities for only one of his claims.  Petitioner has
exhausted his evidentiary claim concerning the introduction of

the $187 in cash.  Petitioner raised that claim in his Appellate

Division brief on direct appeal and, when the claim was

rejected, sought leave to appeal to the New York Court of

Appeals.  As stated above, leave was denied.

    Petitioner's remaining claims are unexhausted and thus

procedurally barred.  Petitioner failed to raise his Rosario

claim in federal constitutional terms in his second

C.P.L. § 440.10 motion.  Petitioner did not raise his

ineffective assistance of counsel claims on direct appeal.

Finally, petitioner never raised his Fourth Amendment and double

jeopardy claims on direct appeal or in either of his C.P.L.

§ 440.10 motions.  See C.P.L. § 440.10(2)(c) (barring collateral

review of a claim that petitioner unjustifiably failed to raise

on direct appeal).

    Petitioner has not made any arguments regarding his failure

to raise these claims in state court--i.e., he has not shown

cause sufficient to overcome the procedural bar.  See Stepney,

760 F.2d at 45.  As a result, this Court need not inquire into

whether barring these claims would cause actual prejudice to

petitioner.  See id.  Further, petitioner has failed to offer

any arguments or new evidence to support an argument that

allowing his conviction to stand would result in a "miscarriage

of justice" such that he would be entitled to federal habeas

review of an otherwise procedurally barred claim.  See Schlup, 513 U.S. at 324-25.

   D. Petitioner's Evidentiary Claim

   The admission of the $187 in cash, even if an error, does not warrant habeas relief.  See Bentley, 41 F.3d at 824.  There is a "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts."  Crane v. Kentucky, 476 U.S. 683, 689 (1986); see also Ponnapula v. Spitzer, 297 F.3d 172, 182 (2d Cir. 2002) ("[N]ot every error of state law can be transmogrified by artful argumentation into a constitutional violation.") (internal quotations omitted).  This Court should not question routine evidentiary rulings of the state courts; its role is rather to determine whether petitioner's constitutional rights have been violated.  See Cullen, 131 S. Ct. at 1398; Lindh v. Murphy, 521 U.S. 320, 333 (1997) (noting § 2254's "highly deferential standard for evaluating state-court rulings").  Further, the only errors that warrant federal habeas relief are those that have a "substantial and injurious effect or influence in determining the jury's verdict."  Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (internal quotations omitted).

   In the instant case, petitioner asserts that intent to sell was not at issue on trial and thus the cash was improperly admitted as evidence.  The Appellate Division, however,

11

disagreed with this argument and held that the evidence was properly admitted "because this evidence was relevant to intent to sell, an essential element of several of the charges of the indictment." Bligen, 35 A.D.3d at 171.  That court supported its finding with the facts that petitioner never conceded the element of intent to sell (further noting that the evidence would not necessarily have been precluded even if petitioner had conceded) and that petitioner's defense counsel raised the issue of intent to sell in summation.  Id.  In accordance with the requisite deference to the Appellate Division, this Court does not find that the evidentiary ruling meets the threshold necessary for federal habeas relief.  See Bentley, 41 F.3d at 824.

Regardless of the high degree of deference given to state court evidentiary rulings, this Court finds that any potential evidentiary error (which likely did not occur) would have been harmless such that it did not have a "substantial and injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 637.

                              CONCLUSION

The petition for habeas corpus is denied.

In addition, the Court declines to issue a certificate of appealability.  Petitioner has not made a substantial showing of a denial of a federal right pursuant to 28 U.S.C. § 2253(c), and

appellate review is therefore not warranted.  Love v. McCray,

413 F.3d 192, 195 (2d Cir. 2005).

     The Court also finds pursuant to 28 U.S.C. § 1915(a)(3)

that any appeal from this Order would not be taken in good

faith.  Coppedge v. United States, 369 U.S. 438, 445 (1962).

     The Clerk of Court is directed to close this case.

SO ORDERED:

Dated:    New York, New York
          June 19, 2012

                                 Katherine B. Forrest
                           United States District Judge

Copies to:

All counsel (via ECF)

Terry Bligen
DIN# 05-R-0684
c/o T. Johnson
New York State Division of Parole, Interstate Bureau
845 Central Avenue
Albany, NY 12206